**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

|  |  |  |
|---|---|---|
| Ghost Cowboy, LLC and Eva Benefield, | ) | C/A No. 2:24-cv-03493-RMG |
|  | ) |  |
| Plaintiffs, | ) |  |
|  | ) | **VERIFIED COMPLAINT** |
| vs. | ) | **(Jury Trial Demanded)** |
|  | ) |  |
| Sean Lowery and Lowery Brands, LLC. | ) |  |
|  | ) |  |
| Defendants. | ) |  |

The Plaintiffs, Ghost Cowboy, LLC ("**Ghost Cowboy**") and Eva Benefield ("**Ms. Benefield**") (collectively, the "**Plaintiffs**"), complaining of the Defendants Sean Lowery ("**Mr. Lowery**") and Lowery Brands, LLC ("**Lowery Brands**") (collectively, "**Defendants**"), would show and allege unto this Honorable Court as follows:

## INTRODUCTION

1.      Ghost Cowboy and Ms. Benefield jointly bring this action in response to Defendants' unlawful use and infringement of Ghost Cowboy's Copyrighted Works and Trademarks, as defined herein. Since at least April 2024 and continuing to the date of this filing, Defendants have operated an online business unlawfully marketing, manufacturing, distributing, and selling Ghost Cowboy's Copyrighted Works and Trademarks under the guise that Defendants are the lawful owners. Despite Ghost Cowboy and Ms. Benefield's efforts to prohibit Defendants' unlawful conduct, Defendants continue to advertise, market, manufacture, distribute, and sell Ghost Cowboy's Copyrighted Works and Trademarks.

2.      Ghost Cowboy and Ms. Benefield bring this action to stop Defendants' continuing infringement of Ghost Cowboy's Copyrighted Works and Trademarks, false designation of origin,

dilution of its valuable trademarks, unfair competition through Defendants' unauthorized advertisement and sale, intentional interference with prospective economic relations, unjust enrichment, violation of the South Carolina Unfair Trade Practices Act, and defamatory conduct.

### FIRST CAUSE OF ACTION
**(Copyright Infringement)**
**(17 U.S.C. § 501)**

A.    **Background on the Parties**

3.    Ghost Cowboy is a limited liability company existing under the laws of the State of South Carolina with its principal place of business in Charleston, South Carolina.

4.    Ms. Benefield is a citizen and resident of Charleston County, South Carolina.

5.    Upon information and belief, Mr. Lowery is a citizen and resident of Charleston, South Carolina and the sole member of Lowery Brands.

6.    Lowery Brands is a limited liability company existing under the laws of the State of South Carolina with its principal place of business in Charleston, South Carolina.

7.    This action arises under the United States Copyright Act of 1976, as amended, 17 U.S.C. Section 101 *et seq*. (the "**Copyright Act**") and under the Lanham Act pursuant to 15 U.S.C. §§ 1051 *et seq*. (the "**Lanham Act**").

8.    The Court has supplemental jurisdiction over the state law causes of action alleged in this Complaint pursuant to 28 U.S.C. §§ 1338(b) and 1367, including, but not limited to, the claims under the common law of trademark infringement and unfair competition, because such claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

9.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1338(a) and (b).

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because all Defendants reside in this District and a substantial part of the events giving rise to the claims alleged occurred in this District.

**B.      Ms. Benefield's Brief Employment with United Monograms**

11.     On or around January 20, 2022, Ms. Benefield was offered employment with Lowery Brands to serve as a marketing associate within their United Monograms division. Ms. Benefield's job responsibilities included marketing and sales.

12.     Ms. Benefield's job responsibilities with United Monograms never included artwork or apparel design.

13.     Around March 2022, Mr. Lowery informed all of the employees with Lowery Brands and United Monograms that his "accounts had been hacked" and that Lowery Brands and United Monograms would not be able to financially support its employees, including Ms. Benefield.

**C.      Ms. Benefield's Creation of the Designs and the Brand**

14.     After her employment ended with United Monograms, Ms. Benefield authored, created, and invented designs, artwork, sketches, and drawings (collectively, the "**Designs**") upon which she affixed copies of said Designs to apparel such as t-shirts, sweatshirts, and hoodies under the brand name of "Ghost Cowboy" (the "**Brand**").

15.     Several prominent Designs that Ms. Benefield authored, created, and invented included, but were not limited to, the following copyrighted works titled "Fish Kiss" (published January 2023), "Meowdy Partner" (published June 2023), and "Playing Cards" (published October 2023) (each a "**Copyrighted Work**" and, collectively, the "**Copyrighted Works**"):

Page 3 of 31







16.     In addition to the aforementioned Copyrighted Works, Ms. Benefield also authored, designed, invented, and created the below logo featuring a skull wearing a cowboy hat to identify and associate the Brand with a specific mark:

54389352 v2



17.    In May 2022, Ms. Benefield posted on her personal TikTok page (@evathefreakindiva) an image of her wearing a t-shirt with one of her Designs in connection with the Brand.

18.    Due to the originality, uniqueness, novelty, and creativity of the Designs, Ms. Benefield's post of the Designs on her TikTok page garnered a significant public interest, viewership, and following demanding that Ms. Benefield sell the Designs.

**D.    Agreement between Ms. Benefield and Lowery Brands**

19.    Following Ms. Benefield's post on her TikTok page and release of the Designs in connection with the Brand to the public, Ms. Benefield contacted Mr. Lowery to inquire into whether Lowery Brands would be interested in entering into an agreement wherein Ms. Benefield would provide her Designs to Lowery Brands and, in turn, Lowery Brands would manufacture, distribute, and sell apparel with Ms. Benefield's Designs.

20.    Ms. Benefield specifically contacted Mr. Lowery because Lowery Brands had the necessary equipment to manufacture, on a large scale, apparel with Ms. Benefield's Designs.

21.    Following several discussions, Mr. Lowery agreed that Lowery Brands would manufacture, distribute, and sell the apparel with Ms. Benefield's Designs and, in exchange, Ms. Benefield and Mr. Lowery agreed to split the profits received from the sale of each apparel with Ms. Benefield's Designs.

22.     Ms. Benefield and Mr. Lowery agreed to split the profits evenly with Ms. Benefield receiving fifty (50%) percent of the profit and Lowery Brands receiving the remaining fifty (50%) percent of the profit. Lowery Brands agreed to remit Ms. Benefield her portion of the profits via PayPal transactions.

23.     To promote and provide an avenue to sell Ms. Benefield's numerous Designs, Ms. Benefield and Mr. Lowery jointly created and developed a website, www.ghostcowboy.co (the "**Joint Website**"), where customers could purchase apparel featuring Ms. Benefield's Designs in connection with Ms. Benefield's Brand.

24.     To promote the Designs and Brand, Ms. Benefield solely created and developed an Instagram account (@ghostcowboy.co) (the "**Instagram Account**").

25.     Ms. Benefield agreed to link the Joint Website to the Instagram Account in order for followers of the Instagram Account to purchase Ms. Benefield's Designs in connection with the Brand by way of accessing the Joint Website.

26.     Ms. Benefield also maintains personal social media accounts including, but not limited to, TikTok (@evathefreakindiva) and Instagram (@evathefreakindiva) (collectively, "**Ms. Benefield's Social Media Accounts**") which she personally used to promote the Brand and associated apparel featuring her Designs.

27.     Ms. Benefield's personal TikTok account has more than three hundred forty thousand (340,000) followers and more than nineteen million, five hundred thousand (19,500,000) likes on TikTok.

28.     At all times, Ms. Benefield maintained the sole and exclusive control, authority, and access to Ms. Benefield's Social Media Accounts and the Instagram Account.

29.     Between May 2022 and November 2023, Ms. Benefield authored, created, and invented numerous Designs for use in connection with the Brand, which garnered significant popularity on Ms. Benefield's Social Media Accounts and the Instagram Account and attracted a large customer base and following. During this time, Ms. Benefield provided Lowery Brands the license to sell apparel with her Designs; however, Ms. Benefield always maintained and continues to maintain the copyrights to each and every Design.

**E.    Irregularities with Lowery Brands' Sales, Mr. Lowery's Inappropriate Text Messages, and Termination of the Agreement between Ms. Benefield and Lowery Brands.**

30.     On or around November 2023, Ms. Benefield discovered that Lowery Brands sold items of apparel for significant sums of money that did not equate to the total value of the items being sold.

31.     By way of one example, Ms. Benefield learned that, on September 11, 2023, Lowery Brands sold one long sleeve t-shirt to a customer for Twenty-Six Thousand, Seven Hundred Sixty and 01/100 ($26,760.01) Dollars.

32.     Based on the unusual sales transactions, Ms. Benefield started to have reservations about continuing to permit Lowery Brands to serve as a manufacturer, distributor, and seller of her Designs and decided to organize her own company, Dash Eva, LLC to hold and own the Designs and the Brand.

33.     On December 21, 2023, Dash Eva, LLC filed and applied for the following trademarks, currently pending registration (U.S. Serial Number 98/326,740 and U.S. Serial Number 98/326,728, respectively) (the "**Trademark Applications**" and, together with the Brand, the "**Trademarks**"), with the United States Patent and Trademark Office for, without limitation,

use in association with the sale of apparel with the Designs including, but not limited to, hats, shirts, sweatshirts, and hoodies:



And

# GHOST COWBOY

34.     Shortly after Dash Eva, LLC's application to register the Trademarks, Ms. Benefield sent a text message to Mr. Lowery to schedule a meeting. In his response to schedule a meeting, Mr. Lowery quizzically and outrageously texted:  "Like I don't usually have nothing to say – but Im [sic] just stuttering stanley [sic] I have nothing to say  Like [sic] if you both sit down and stare at me im [sic] not gonna [sic] be the one to resolve anything.  I guess it would be easier if you raped my baby then I could be FURIOUS [sic] Actually idc [sic] they could use a good raping".

35.     Based on the aforementioned text message conversation, and in addition to the unusual sales transactions, Ms. Benefield decided to terminate her business relationship with Lowery Brands.

36.     As a result of her decision to terminate the relationship with Lowery Brands, on March 6, 2024, Ms. Benefield, along with other members, organized Ghost Cowboy to continue operating, selling, manufacturing, and distributing the Designs in connection with the Brand.

37.     Ghost Cowboy created its own separate website, www.ghost-cowboy.com, ("**Ghost Cowboy's Website**"), to sell, manufacture, and distribute Ms. Benefield's Designs under

the Brand. Ms. Benefield, along with Dash Eva, subsequently assigned all of their intellectual property rights in the Designs, Brand, and Trademarks to Ghost Cowboy. A true and correct copy of the assignments are attached hereto as **Exhibits A**, **B, and C**, respectively.

**F.     Defendants' Unlawful Use and Infringement of Ghost Cowboy's Copyrighted Works, Designs, and Trademarks and Defamation of Ms. Benefield**

38.     After Ms. Benefield notified Mr. Lowery she was terminating her agreement with Lowery Brands, she demanded that Mr. Lowery and Lowery Brands (a) immediately cease and desist from reproducing, publishing, advertising, manufacturing, distributing, and selling copies of the Designs and Trademarks, (b) stop using the Trademarks, (c) and terminate the Joint Website, which included the entirety of the term GHOST COWBOY.

39.     Since Ms. Benefield's demand, Mr. Lowery and Lowery Brands have not only refused to stop unlawfully publishing, advertising, manufacturing, distributing, and selling copies of the Designs and Trademarks but have taken to social media to defame Ms. Benefield. In particular, on May 12, 2024, Mr. Lowery posted a TikTok video stating that Ms. Benefield was "DELUSIONAL", that her conduct was "fundamentally illegal", that she "lack[ed] on [sic] business acumen", and, that her creation of a new website was "ILLEGAL".

40.     Mr. Lowery's TikTok video was viewed by over three hundred and fifty (350) TikTok users.

41.     On May 9, 2024, Defendants were again notified to cease and desist of their ongoing improper reproduction, publication, distribution, advertising, public display, and sale of copies of Plaintiffs' Designs and use of the Trademarks and to terminate the Joint Website (the "**May 9, 2024 Cease and Desist Correspondence**"). Despite receipt of the May 9, 2024 Cease and Desist Correspondence, Defendants continued with their unlawful conduct.

54389352 v2

42.    On June 6, 2024, Ghost Cowboy registered the Copyrighted Works with the Register of Copyrights pursuant to 17 U.S.C. § 411(a). The United States Copyright Office issued United States Copyright Registration No. VA 2-396-958 for "Fish Kiss", United States Copyright Registration No. VA 2-396-957 for "Meowdy Partner", and United States Copyright Registration No. VA 2-396-954 for "Playing Cards" (collectively, the "**Copyright Registrations**"). Ghost Cowboy thereby holds valid Copyright Registrations from the U.S. Copyright Office for the Copyrighted Works.

43.    Since April 2024, Defendants have unlawfully reproduced, published, publicly displayed, distributed, advertised, and sold identical copies of Ghost Cowboy's Copyright Works and Designs in connection with the Trademarks by surreptitiously using the Joint Website to improperly and unlawfully divert customers and potential customers from Ghost Cowboy's Website.

44.    In particular, by way of one example, **Table 1** and **Table 2**, below, identify a portion of Ghost Cowboy's Website compared, via red circles, with a portion of the Joint Website that Defendants are unlawfully using to infringe on Ghost Cowboy's Trademarks and unlawfully exploiting Ghost Cowboy's Copyrighted Works and Designs:

**Table 1:**

**Ghost Cowboy's Website:**



**Table 2:**

**Defendants' Unlawful Use of The Joint Website (as of June 10, 2024):**



54389352 v2

45.    By way of another example, **Table 3**, below, shows Ghost Cowboy's Copyrighted

Works compared with representative samples of Defendants' infringing works currently offered

for distribution and sale on the Joint Website:



| Table 3: The Infringing Works | |
|---|---|
| **Plaintiffs' Copyrighted Works** | **Defendants' Infringing Works** |
| 1(a) | 1(b) |
| 2(a) | 2(b) |
| 3(a) | 3(b) |

46.     Despite receiving multiple cease and desist demands, Defendants continue to openly engage in unlawfully copying, marketing, manufacturing, producing, and selling Ghost Cowboy's Copyrighted Works and Designs on the Joint Website in direct and willful violation of Section 501 of the Copyright Act, 17 U.S.C. § 501.

47.     Through their unlawful infringing conduct, Defendants have not only intentionally misled and misdirected customers to the Joint Website to purchase what appears to be Ghost Cowboy's Copyrighted Works and Designs but have also avoided payment of license fees, withheld profits owed to Ghost Cowboy, and other financial costs associated with exploiting the Copyrighted Works and Designs.

48.     Defendants' infringing conduct was and continues to be willful and intentional with full knowledge of the rights of Ghost Cowboy and its predecessors in interest in the Copyrighted Works and Designs, and has enabled Defendants to illegally profit therefrom.

49.     As a direct and proximate result of Defendants' infringing conduct alleged herein, Ghost Cowboy has been harmed and is entitled to actual damages in an amount to be proven at trial. Pursuant to 17 U.S.C. § 504(b), Ghost Cowboy is also entitled to a disgorgement of Defendants' profits attributable to their infringing conduct, including from any and all sales of each Copyrighted Work and any and all products incorporating or embodying each Copyrighted Work, and an accounting of and a constructive trust with respect to such profits. Further, Ghost Cowboy is entitled to attorneys' fees and costs pursuant to 17 U.S.C. § 505.

50.     As a direct and proximate result of the Defendants' infringing conduct alleged herein, Ghost Cowboy has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Unless Defendants' infringing conduct is enjoined by this Court, Defendants will continue to infringe the Copyrighted Works and

54389352 v2

Designs. Ghost Cowboy is therefore entitled to preliminary and permanent injunctive relief restraining and enjoining Defendants' ongoing infringing conduct.

**SECOND CAUSE OF ACTION**
**(Federal Trademark Infringement)**
**(15 U.S.C. § 1125(a))**

51.     The allegations contained in the previous Paragraphs are incorporated herein as if fully set forth verbatim.

52.     Ghost Cowboy and its predecessors in interest have continuously and extensively used the Trademarks in commerce throughout the United States in association with the advertising, offering, and sale of apparel since at least May 30, 2022, including without limitation the advertising, offering, and sale of hats, shirts, sweatshirts, hoodies, and other apparel items online via Ms. Benefield's external websites and Ms. Benefield's Social Media Accounts, and a substantial number of consumers have been exposed to the Trademarks and the goods and services associated therewith.

53.     As a result of this extensive use and public exposure of the Trademarks by Ghost Cowboy, the Trademarks have become widely recognized by the general consuming public of the United States as a designation of the source of the goods or services of Ghost Cowboy, and Ghost Cowboy and its predecessors in interest have made substantial sales of the goods and services offered under the Trademarks throughout the United States.

54.     Through the continuous use of the Trademarks in commerce throughout the United States, Ghost Cowboy and its predecessors in interest have distinguished themselves from other manufacturers of clothing apparel, have developed significant nationwide common law and statutory rights in and to the Trademarks, and have established considerable goodwill in the business connected with the use of the Trademarks and symbolized by the Trademarks.

54389352 v2

55.    Ghost Cowboy and its predecessors in interest have invested substantial time, effort, and financial resources promoting the Trademarks in connection with the marketing and sale of their goods and services in interstate commerce. Ghost Cowboy's Trademarks have become, through widespread and favorable public acceptance and recognition, an asset of substantial value as a symbol of Ghost Cowboy, its quality products, and its goodwill.

56.    The consuming public recognizes the Trademarks and associates the Trademarks with Ghost Cowboy.

57.    Ghost Cowboy is the exclusive owner of all right, title, and interest in and to the Trademarks, which are inherently distinctive, and protectable trademarks, including any and all common-law rights associated with the same and all goodwill connected therewith.

58.    At least as early as April 2024, Defendants adopted, used, and continue to use trademarks that are identical to the Trademarks (the "**Infringing Marks**") in interstate commerce in connection with the sale and offering for sale of clothing apparel. **Table 4**, below, shows but a few representative examples of Defendants' use of the Infringing Marks on the Joint Website, as compared to Plaintiffs' use of the Trademarks on the Ghost Cowboy Website.

| Table 4 | |
|---|---|
| **Ghost Cowboy's Trademarks** | **Defendants' Infringing Marks** |
|  | |

54389352 v2



59.    As between Ghost Cowboy and Defendants, Ghost Cowboy has priority in the use of the Trademarks for clothing apparel within the geographic areas in which Defendants have adopted, used, and continue to use the Infringing Marks to advertise and sell competing apparel products.

60.    Defendants advertise and sell their apparel products under the Infringing Marks within the same trade channels in which Ghost Cowboy advertises and sells its apparel products using the Trademarks including, without limitation, on social media websites such as Instagram and TikTok. Defendants even advertise and sell their clothing using the domain name www.ghostcowboy.co despite Ghost Cowboy advertising and selling its clothing products using the domain name www.ghost-cowboy.com. Defendants' use of the www.ghostcowboy.co domain

54389352 v2

name not only constitutes infringement of the Trademarks, but further compounds the likelihood that consumers will be confused and harmed due to Defendants' infringing acts.

61.     Without Ghost Cowboy's consent, Defendants have used and continue to use the Infringing Marks in connection with the sale, offering for sale, distribution, and/or advertising of Defendants' apparel products.

62.     Defendants have engaged in their infringing activity despite having actual knowledge of the prior use and ownership of the Trademarks by Ghost Cowboy and its predecessors in interest.

63.     Defendants' actions have already and will continue to mislead the public into concluding that their goods and services originate with or are authorized by Ghost Cowboy, which will damage both Ghost Cowboy and the public. Ghost Cowboy has no control over the quality of goods or services sold by Defendants, and, because of the source confusion caused by Defendants, Ghost Cowboy has lost control over its valuable goodwill.

64.     Defendants have advertised and offered their goods for sale using the Infringing Marks with the intention of misleading, deceiving, or confusing consumers as to the origin of their goods and of trading on Ghost Cowboy's reputation and goodwill. Defendants' use of the Infringing Marks constitutes willful, deliberate, and intentional trademark infringement.

65.     Ghost Cowboy and its predecessors in interest have demanded that Defendants cease and desist from their infringing actions, but Defendants have failed to comply with these requests.

66.     Defendants' unauthorized use of the Infringing Marks in interstate commerce as described is a violation of the Trademark Act under 15 U.S.C. § 1125(a) and has caused and will continue to cause consumer confusion, mistake, or deception.

54389352 v2

67.    As a direct and proximate result of Defendants' trademark infringement, Ghost Cowboy has suffered and will continue to suffer irreparable loss of income, profits, and goodwill and Defendants have unfairly acquired and will continue to unfairly acquire income, profits, and goodwill.

68.    If not restrained by this Court, Defendants will continue to willfully infringe Ghost Cowboy's trademark rights, and Defendants' trademark infringement will cause further irreparable injury to Ghost Cowboy. Ghost Cowboy has no adequate remedy at law.

69.    Ghost Cowboy is entitled to an injunction prohibiting Defendants' continued use of the Trademarks or any other confusingly similar mark in connection with the sale of apparel.

70.    Defendants' willful infringement of Ghost Cowboy's Trademark rights makes this case "exceptional," as defined in 15 U.S. § 1117, thus entitling Ghost Cowboy to its reasonable attorneys' fees.

71.    Ghost Cowboy is further entitled to recover all profits made by Defendants from sales of products under or in connection with the Infringing Marks, all damages sustained by Plaintiffs' due to Defendants' infringing activities, and the costs of this action.

## THIRD CAUSE OF ACTION
### (False Designation of Origin and Unfair Competition)
### (15 U.S.C. § 1125(a))

72.    The allegations contained in the previous Paragraphs are incorporated herein as if fully set forth verbatim.

73.    Defendants' unauthorized marketing and sale of products in interstate commerce using their Infringing Marks constitutes use of a false designation of origin or false representation that wrongfully and falsely designates Defendants' products as originating from or connected with

Ghost Cowboy in violation of 15 U.S.C. § 1125(a). The actions of Defendants constitute intentional, willful, knowing, and deliberate unfair competition.

74.    Defendants continue to use Ghost Cowboy's Designs and Trademarks in association with Defendants' sale of apparel to their customers on the Joint Website using the Infringing Marks. The Infringing Marks are identical to Ghost Cowboy's Trademarks, the Designs featured on the Joint Website are identical copies of Plaintiffs' Designs, and the domain name of the Joint Website is the same and/or substantially similar to the domain name of Ghost Cowboy's Website. Defendants' actions, alone and in combination, falsely designate the source of Defendants' goods as though originating from Ghost Cowboy.

75.    Defendants' unauthorized use of Designs and Infringing Marks has caused actual consumer confusion and is likely to continue to cause consumer confusion, mistake, or deception.

76.    Defendants' acts described above constitute false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a).

77.    As a direct and proximate result of Defendants' acts of false designation of origin and unfair competition, Ghost Cowboy has suffered and will continue to suffer irreparable loss of income, profits, and goodwill and Defendants have unfairly acquired and will continue to unfairly acquire income, profits, and goodwill.

78.    Ghost Cowboy has no adequate remedy at law concerning the confusion created by Defendants.

79.    Ghost Cowboy is entitled to an injunction to prevent Defendants from adopting or using Designs or Trademarks, or confusingly similar mark or referencing model number, in or on any of the products they sell or distribute, including apparel.

80.     Defendants' actions are willful and with knowledge of Ghost Cowboy's rights. As such, this is an exceptional case entitling Ghost Cowboy to treble damages and attorneys' fees.

81.     Ghost Cowboy is entitled to damages against Defendants for their past use of the Designs, Brand, and Trademarks which included, but are not limited to, the profits attributable to the unauthorized use of Designs, Brand, and Trademarks; Ghost Cowboy's lost sales; the costs of the action, including reasonable attorneys' fees; treble damages; and other damages as may be determined at trial.

**FOURTH CAUSE OF ACTION**
**(False Advertising)**
**(15 U.S.C. § 1125(a))**

82.     The allegations contained in the previous Paragraphs are incorporated herein as if fully set forth verbatim.

83.     Defendants have engaged in the unauthorized use of the Designs, Brand, and Trademarks in connection with advertising and promotional materials that falsely represent the quality of the apparel sold. For example, Defendants' use of an image of a genuine Ghost Cowboy t-shirt in a product listing for apparel falsely suggests that the quality of the Defendants' t-shirt is the same as Ghost Cowboy's t-shirt.

84.     Defendants have engaged in the unauthorized use of the Designs, Brand, and Trademarks in sponsored product listings that misrepresent the goods actually being sold, including links available on the internet to product listings for apparel sold by Defendants that do not originate from Ghost Cowboy.

85.     These statements and unauthorized uses of images of Ghost Cowboy's Designs, Brand, and Trademark actually deceive, and/or have a tendency to deceive, a substantial segment of Ghost Cowboy's customers and potential customers. This deception is material in that it

concerns the quality or characteristics of products sold by Defendants and is likely to influence the purchasing decisions of consumers.

86.    Defendants' false and misleading advertising statements injure both consumers and Ghost Cowboy.

87.    Defendants' acts have caused, and will continue to cause, damage to Ghost Cowboy and jeopardize the entire reputation and goodwill symbolized by Ghost Cowboy, causing immediate, serious, and irreparable injury to Ghost Cowboy for which Ghost Cowboy does not have an adequate remedy at law.

88.    Furthermore, Defendants' conduct as complained herein was undertaken willfully and with the intention of causing confusion, mistake or deception, making this an exceptional case.

89.    Ghost Cowboy is entitled to damages against Defendants for their false advertising of the Designs, Brand, and Trademarks which included, but are not limited to, the profits attributable to the unauthorized use of Designs, Brand, and Trademarks; Ghost Cowboy's lost sales; the costs of the action, including reasonable attorneys' fees; treble damages; and other damages as may be determined at trial.

## FIFTH CAUSE OF ACTION
### (Trademark Dilution)
### (15 U.S.C. § 1125(c))

90.    The allegations contained in the previous Paragraphs are incorporated herein as if fully set forth verbatim.

91.    As a result of the distinctiveness and widespread use and promotion throughout the United States, as described above, the Trademarks have become famous within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. 1125(c), and became famous prior to the acts of the Defendants.

92.     Defendants' acts as alleged herein have diluted and will, unless enjoined, continue to dilute and are likely to dilute the distinctive quality of Ghost Cowboy's famous Trademarks.

93.     Defendants' acts as alleged herein have tarnished and will, unless enjoined, continue to tarnish, and are likely to tarnish Ghost Cowboy's Trademarks by undermining and damaging the valuable goodwill associated therewith.

94.     Defendants' acts as alleged herein are intentional and willful in violation of Section 43(c)(1) of the Lanham Act, 15 U.S.C. 1125(c)(1), and have already caused Ghost Cowboy irreparable damage and will, unless enjoined, continue to so damage Ghost Cowboy, which has no adequate remedy at law.

95.     Ghost Cowboy is entitled to, among other relief, an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116 and 1117, together with prejudgment and post-judgment interest.

## SIXTH CAUSE OF ACTION
### (Common Law Trademark Infringement)

96.     The allegations contained in the previous Paragraphs are incorporated herein as if fully set forth verbatim.

97.     Prior to Defendants' use of the Infringing Marks, Ghost Cowboy has used, and continues to use, the Trademarks for the sale of apparel in commerce in the State of South Carolina, and has developed substantial consumer recognition for the Trademarks within the State of South Carolina. This consistent and continuous use of the Trademarks in commerce resulting in consumer recognition renders the Trademarks valid and protectable marks entitled to common law rights in the State of South Carolina.

54389352 v2

98.    Defendants' use of the Trademarks in the Infringing Marks, without Ghost Cowboy's consent, constitutes infringement of Ghost Cowboy's South Carolina common law trademark rights because, among other things, Defendants' unauthorized use of the Infringing Marks in the same geographic area as Ghost Cowboy's use is likely to cause confusion, deception, and mistake among consumers and the trade as to the source, approval, or sponsorship of Defendants' apparel.

99.    Defendants' acts have caused, and will continue to cause, damage to Ghost Cowboy and jeopardize the entire goodwill symbolized by the Trademarks, causing immediate, serious, and irreparable injury to Ghost Cowboy for which Ghost Cowboy does not have an adequate remedy at law.

### SEVENTH CAUSE OF ACTION
**(Intentional Interference with Prospective Economic Relations)**

100.    The allegations contained in the previous Paragraphs are incorporated herein as if fully set forth verbatim.

101.    Ghost Cowboy offers its Designs, Brand, and Trademarks via Ms. Benefield's Social Media Accounts including TikTok, Instagram, and Facebook, along with other online retailers.

102.    Defendants are interfering with Ghost Cowboy's prospective economic relations by using an improper method of competition to lure Ghost Cowboy's customers to the Joint Website.

103.    Defendants' actions are causing irreparable harm as well as actual damages which include lost profits of Ghost Cowboy and the profits of Defendants.

104.    Ghost Cowboy is entitled to an injunction against Defendants for their past use of the Designs, Brand, and Trademarks which included, but are not limited to: the profits attributable

to the unauthorized use of the Designs, Brand, and Trademarks; Ghost Cowboy's lost sales; the costs of the action, including reasonable attorneys' fees; treble damages; and other damages as may be determined at trial.

## EIGHTH CAUSE OF ACTION
### (Unjust Enrichment)

105.    The allegations contained in the previous Paragraphs are incorporated herein as if fully set forth verbatim.

106.    With neither the authorization nor permission of Ghost Cowboy, Defendants have used the Designs, Brand, and Trademark in association with the sale of their respective products and/or services.

107.    Defendants' use of the Designs, Brand, and Trademarks conferred a benefit upon Defendants.

108.    Defendants are aware that the use of the Designs, Brand, and Trademarks have conferred a benefit upon them.

109.    Defendants have accepted and retained the benefit of the use of Designs, Brand, and Trademarks under conditions that make it inequitable or unjust for Defendants to retain such benefit without paying its value.

110.    Defendants retained profits and/or cost savings that they would not have otherwise obtained but for their unlawful use of the Designs, Brand, and Trademarks.

111.    Ghost Cowboy is entitled to a judgment against Defendants for the reasonable value of Defendants' use of the Designs, Brand, and Trademarks, together with legal interest.

## NINTH CAUSE OF ACTION
### (Violation of South Carolina Unfair Trade Practices Act)
### (S.C. Code Ann § 39-5-10 et seq.)

54389352 v2

112.    The allegations contained in the previous Paragraphs are incorporated herein as if fully set forth verbatim.

113.    Since April 2024, Defendants have used, and continue to use, the Designs, Brand, and Trademarks in association with the sale of apparel to customers on the Joint Website knowingly and repeatedly entering into sales contracts with South Carolina residents.

114.    Defendants' acts are deceptive in that they are likely to cause consumer confusion regarding the source of Defendants' goods and/or services.

115.    Defendants' acts have, in fact, caused consumers to mistakenly believe that the apparel being sold by Defendants were created and produced by Ghost Cowboy.

116.    Defendants' acts are unfair in that they deprive Ghost Cowboy of its exclusive rights to the Designs, Brand, and Trademarks.

117.    Defendants' acts have been repeated and otherwise adversely affect the public interest thereby depriving Ghost Cowboy of its exclusive rights to the Designs, Brand, and Trademarks.

118.    Defendants' acts have continued despite their knowledge of Ghost Cowboy's intellectual property rights and goodwill in the Designs, Brand, and Trademarks and Ghost Cowboy's demands that Defendants cease using the Designs, Brand, and Trademarks.

119.    The actions of Defendants were committed with the intent, purpose and effect of procuring an unfair competitive advantage and such actions have the effect of harming the public.

120.    The actions of Defendants have caused, and are continuing to cause, damages to Ghost Cowboy.

121.    The actions of Defendants are causing irreparable harm to Ghost Cowboy.

122.    Defendants' actions were, and are, a willful and knowing violation of S.C. Code Ann. § 39-5-20.

123.    Ghost Cowboy is entitled to an injunction against Defendants prohibiting Defendants from engaging in unfair and deceptive trade practices by using the Designs, Brand, and Trademarks without authority or permission of Ghost Cowboy, plus a judgment against the Defendants for past damages suffered by Ghost Cowboy, as well as treble damages and attorneys' fees.

**TENTH CAUSE OF ACTION**
**(Defamation)**

124.    The allegations contained in the previous Paragraphs are incorporated herein as if fully set forth verbatim.

125.    Mr. Lowery intentionally, willfully, and wantonly communicated false, defamatory, incriminating, and damaging untruths about Ms. Benefield and her business operations to third parties.

126.    In particular, on  or about May 12, 2024 via TikTok live stream, Mr. Lowery called Ms. Benefield "DELUSIONAL", that her conduct was "fundamentally illegal", that she "lack[ed] on [sic] business acumen", and, that her creation of a new website was "ILLEGAL". These statements are false and defamatory *per se* and actionable *per se*.

127.    Mr. Lowery's TikTok video was viewed by over three hundred and fifty (350) TikTok users.

128.    Mr. Lowery is at fault for making such false and defamatory statements, and Mr. Lowery made the same willfully, wantonly, and with reckless disregard for the truth and for the sole purpose of wantonly injuring Ms. Benefield, Ghost Cowboy, and its business operations without cause.

Page 26 of 31

129.    The defamatory statements made by Mr. Lowery have damaged Ms. Benefield and Ghost Cowboy's reputation in the community and have harmed Ms. Benefield's goodwill and business operations.

130.    Because Mr. Lowery made such false and defamatory statements about Ms. Benefield and Ghost Cowboy willfully, wantonly, and with reckless disregard for the truth and for the sole purpose of wantonly injuring Ms. Benefield without cause, Ms. Benefield is entitled to recover actual and punitive damages.

**WHEREFORE**, Plaintiffs hereby request a determination of the issues raised and pray that this Court award the following relief:

A.    An Order temporarily and permanently enjoining and restraining Defendants, and their respective members, servants, employees, successors, agents, and assigns, and all other persons acting in concert or conspiring with any of them or who are affiliated with Defendants from:

i.    Marketing, Manufacturing, Reproducing, Creating Derivative Works of, Publishing, Distributing, Publicly Displaying, Advertising, Selling, or Offering for Sale Ghost Cowboys' Copyrighted Works and Designs (or any substantially similar works or designs or any products, works, or other materials that include, copy, or are derived from, or otherwise embody the Copyrighted Works or Designs) including on any websites or social media;

ii.    Registering or maintaining any social media accounts (such as YouTube, LinkedIn, Facebook, Instagram, WhatsApp, TikTok, or X (formerly Twitter)), that promote or improperly imply that that Defendants own Ghost Cowboy's Copyrighted Works and Designs;

iii. Registering or applying to register any Ghost Cowboy Design (or any substantially similar designs or any products, works, or other materials that include, copy, or are derived from, or otherwise embody the Copyrighted Works or Designs) as Defendants' own copyright;

iv. Using Ghost Cowboys' Trademarks, or any other mark likely to cause confusion or mistake with the Ghost Cowboy Trademarks (including any alternative spellings or variations of those marks), or likely to dilute the distinctiveness of the Trademarks, in, on, or with any products or services, or in connection with the advertising marketing, or other promotion, distribution, offering for sale, or sale, of any products or services, including on websites or social media;

v. Registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating the term GHOST COWBOY, a skull wearing a cowboy hat, or any other mark that infringes or is likely to be confused with Plaintiffs' Trademarks, or any goods or services of Plaintiffs, or Plaintiffs as their source;

vi. Using any false designation of origin, false representation, or misleading description of fact, that can, or is likely to lead the consuming public or individual members thereof, to believe that any products or services offered, promoted, advertised, provided, sold, or otherwise distributed by the Defendants are in any manner associated or connected with Ghost Cowboy, or are licensed, approved, or authorized in any way by Ghost Cowboy;

vii.     Representing, suggesting in any fashion to any third party, or performing any act that may give rise to the belief that the Defendants, or any of their products or services, are related to, or authorized, endorsed, or sponsored by, Ghost Cowboy;

viii.    Registering or maintaining any domain names in the Defendants' possession, custody, or control that include the word "Ghost Cowboy" (including any similar alternative spellings or variations of the word), or that are otherwise confusingly similar to the Trademarks;

ix.     Registering or maintaining any social media accounts (such as YouTube, LinkedIn, Facebook, Instagram, WhatsApp, TikTok, or X (formerly Twitter)), that use or promote Ghost Cowboy's Trademarks (including any alternative spellings or variations of the marks);

x.     Unfairly competing with Ghost Cowboy in any manner whatsoever, or engaging in any unfair, fraudulent, or deceptive business practices that are related in any way to the production, distribution, marketing, offer for sale, and/or sale of products and services bearing the Ghost Cowboy Trademarks, or any other mark or trade name likely to cause confusion with the Ghost Cowboy Trademarks or trade name (including any alternative spellings or variations of those marks); and

xi.     Applying for or seeking to register any other mark likely to cause confusion or mistake with the Ghost Cowboy Trademarks (including any alternative spellings or variations of the mark or trade name);

54389352 v2

B.    To destroy any remaining inventory of merchandise as well as any and all advertising and promotional materials, displays, marketing materials, web pages, and all other data or things that display Ghost Cowboy's Copyrighted Works and Designs;

C.    To destroy any remaining inventory of merchandise as well as any and all advertising and promotional materials, displays, marketing materials, web pages, and all other data or things that use the words "Ghost Cowboy" (including any similar alternative spellings or variations of the words), or that are otherwise confusing similar to the Ghost Cowboy Trademarks;

D.    To file with this Court and serve on Plaintiffs within thirty (30) days after the service of the injunction, a report, in writing, under oath, setting forth the detail the manner and form in which it has complied with the injunction pursuant to 15 U.S.C. § 1116;

E.    To disseminate corrective advertising at Defendants' sole expense that informs consumers, the trade, and the public at large of Defendants' unlawful conduct as complained of herein and of the judgment requiring Defendants to cease such unlawful conduct, and/or order Defendants to pay Plaintiffs' costs in producing and disseminating such corrective advertising;

F.    An award of actual damages and disgorgement of all profits received by Defendants through their unlawful infringement and exploitation of Ghost Cowboy's Copyrighted Works plus Ghost Cowboys' reasonable attorneys' fees and costs incurred in this action in accordance with 17 U.S.C. §§ 504 & 505;

G.    An award of actual damages and disgorgement of all profits received by Defendants through their unlawful infringement, willful and intentional acts of unfair competition, false advertising, and exploitation of Ghost Cowboy's Trademarks, plus treble damages, and Ghost Cowboys' reasonable attorneys' fees and costs incurred in this action in accordance with 15 U.S.C. § 1117;

H.    An award of actual and punitive damages sustained by Plaintiffs as a result of Defendants' acts of intentional interference with prospective economic relations and unjust enrichment as alleged herein;

I.    An award of actual and punitive damages for Defendants' violation of South Carolina's Unfair Trade Practices Act, the amount to be trebled due to Defendants' willful and knowing violations, along with Ghost Cowboy's reasonable attorneys' fees and costs incurred in this action pursuant to S.C. Code Ann. § 39-5-140;

J.    Ms. Benefield be granted judgment against Mr. Lowery for his defamatory conduct and be awarded actual and punitive damages;

K.    Pre- and post-judgment interest on Plaintiffs' judgment;

L.    For such other relief as this Court deems just and proper.

Respectfully submitted,

**BURR & FORMAN LLP**

/s/ John F. Connell, Jr.
John F. Connell, Jr. Fed Bar No. 12557
104 South Main Street, Suite 700
Greenville, South Carolina 29601
Telephone: (864) 271-4940
Email: jconnell@burr.com

Greenville, South Carolina
Dated: June 12, 2024

*Attorneys for Plaintiffs Ghost Cowboy, LLC and Eva Benefield*

## VERIFICATION

I, Eva Benefield, declare as follows:

1.      I am a Plaintiff and the majority member of Plaintiff Ghost Cowboy, LLC in the above-referenced action.

2.      I have personal knowledge of myself, my activities, and my intentions, including those set out in the foregoing *Verified Complaint*, and if call on to testify, I would competently testify as to the matters stated herein.

3.      I have personal knowledge of Plaintiff Ghost Cowboy, LLC, its activities, and its intentions, including those set out in the foregoing *Verified Complaint*, and if called on to testify, I would competently testify as to the matters stated herein.

4.      I verify under penalty of perjury under the laws of the United States of America that the factual statements in the *Verified Complaint* concerning myself, my activities, and my intentions are true and correct, as are the factual statements concerning Plaintiff Ghost Cowboy, LLC, its activities, and its intentions. 28 U.S.C. § 1746.

Executed this 12th day of June, 2024.

_____
Eva Benefield